UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN R. CARRE,

    Plaintiff,

v.

Case No. 25-cv-11628
Hon. Matthew F. Leitman

COLETTE NUTTON, *et al.*,

    Defendants.

_____/

**ORDER (1) DENYING EMERGENCY MOTIONS FOR TEMPORARY RESTRAINING ORDER (ECF Nos. 2, 11, 17); (2) DENYING EMERGENCY MOTION FOR PRESERVATION OF EVIDENCE AND ISSUANCE OF LITIGATION HOLD (ECF No. 10); AND (3) DENYING MOTION FOR ENTRY OF RELIEF ON UNOPPOSED PENDING MOTIONS (ECF No. 44)**

According to Plaintiff Susan R. Carre ("Carre"), her mother, Charlene A. Nutton ("Charlene"), suffers from advanced dementia that prevents her from caring for herself and managing her finances. Carre says that she and her sister, Colette Nutton ("Colette"), sharply disagree about the care that should be provided to Charlene and about how Charlene's assets should be used. Their disagreement ended up before the Oakland County Probate Court when Carre sought orders granting her (Carre) a temporary guardianship and conservatorship over Charlene. (*See* Oakland Cnty. Materials, ECF No. 1, PageID.7-86.) She lost. The Probate Court denied Carre's petitions and related motions, appointed a different person as guardian ad litem for Charlene, and dismissed Carre's action. (*See* 5/27/2025 Order Dismissing Case, ECF

1

No. 21, PageID.579; 3/12/2025 Order Appointing Guardian Ad Litem, ECF No. 21, PageID.561.)

Carre has now turned her state-court family law litigation into this federal case, which she is pursing *pro se*. But here she complains about far more than just Colette's allegedly poor choices with respect to Charlene's care and finances. She claims that her efforts to secure the proper care for Charlene have been stymied by the concerted unlawful action of Colette, Colette's lawyers, a municipal police department, a municipal clerk, the senior living facility in which Charlene lives, and even the Oakland County Probate Court, itself. She brings several claims against these Defendants under 42 U.S.C. § 1983. (*See* Am. Compl., ECF No. 7.)

Now before the Court are four motions that Carre has filed for emergency relief. (*See* Mots. for Temporary Restraining Order, ECF Nos. 2, 11, 17; Mot. for Preservation of Evidence, ECF No. 10.) In two of the motions, Carre asks the Court to "protect" Charlene from "ongoing elder abuse, financial exploitation, and [the] systematic denial of her documented end-of-life wishes." (Mot., ECF No. 2, PageID.89; Am. Mot., ECF No. 11, PageID.466.) In those motions, she seeks a temporary restraining order that (1) "[f]reez[es] all of [Charlene's] financial assets pending resolution," (2) prohibits or monitors expenditures from Charlene's accounts, (3) issues "[c]ourt-approved . . . relocation funds for [Carre]," (4) enjoins "further facility transfers" of Charlene, (5) requires an "immediate comprehensive safety assessment" of Charlene's care, (6) orders "enhanced monitoring and reporting" of incidents and medical decisions, (7)

ensures "unrestricted family access for medical decision input and facility oversight," and (8) requires "court approval for any major medical decisions, care plan changes, or facility transfers[.]" (Mot., ECF No. 2, PageID.93; Am. Mot., ECF No. 11, PageID.471-472.)  In a third motion, Carre claims that Colette made death threats against her, and she asks the Court to enter a temporary restraining order, among other things, prohibiting Colette from contacting her and Charlene, suspending Colette's medical decision-making authority for Charlene, and suspending Colette's access to Charlene's finances. (*See* Mot., ECF No. 17.)  In the final emergency motion, Carre asks the Court to "direct[] the immediate preservation of all audio/video recordings, transcripts, and digital evidence from the Oakland County Probate Court proceedings held on May 16, 2025 at 1:30 PM and May 23, 2025 at 10:00 AM." (Mot., ECF No. 10, PageID.456.)  Carre has also filed a "Motion for Entry of Relief" on those motions on the basis that the Defendants have failed to respond in opposition to them. (Mot., ECF No. 44.)

For the reasons explained below, the motions are **DENIED**.

**I**

**A**

When determining whether to grant a temporary restraining order, a district court must apply the following four-part test:

> (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm

3

to others; and (4) whether the public interest would be served by issuance of the injunction.

*Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003). *See also Malam v. Adducci*, 452 F.Supp.3d 643, 654 (E.D. Mich. 2020) (applying preliminary injunction standard to application for temporary restraining order).

**B**

As noted above, Carre's four motions for emergency relief seek three types of restraining orders: an order directing the management of Charlene's care and assets (*see* Mots., ECF Nos. 2, 11); an order prohibiting Colette from contacting Carre and Charlene and removing Colette's decision-making authority over Charlene (*see* Mot., ECF No. 17); and an order directing the Oakland County Probate Court to preserve evidence (*see* Mot., ECF No. 10). The Court addresses the three requested orders separately below.

**1**

The Court begins with Carre's requests for an order directing the management of Charlene's care and assets. (*See* Mots., ECF Nos. 2, 11.) For the reasons explained below, the Court concludes that all four of the injunction factors weigh against entering such an order.

a

As an initial matter, Carre has not shown a strong likelihood of success on the merits. The Court has previously noted that serious questions are apparent from the face of the pleadings as to both the Court's subject-matter jurisdiction and the merits of Carre's claims. For example, Charlene is not a party to this action, but most, if not all, of Carre's claims appear to be brought on behalf of, and to seek redress for injuries allegedly suffered by, Charlene. It is not clear that Carre would have Article III standing to assert such claims. Indeed, in Carre's Motion for Appointment as Next Friend, Carre explains that "Charlene must be added as plaintiff because she is the primary victim of this criminal enterprise – her constitutional rights to due process, family association, and autonomous medical decisions have been systematically violated through fraudulent legal authority while she lacks capacity to protect herself." (Mot., ECF No. 20, PageID.533.) Thus, it would appear that Carre lacks Article III standing for most, if not all, of the claims in this case. While Carre also contends that she, too, has "suffered distinct constitutional injuries . . . through systematic exclusion from family relationships, due process violations in corrupted state proceedings, and federal witness intimidation," (*id.*), she has not shown a strong likelihood of success on any of the claims that she could conceivably be pursuing on her own behalf.

Second, Carre brings claims under Section 1983 against private parties who are generally not subject to liability under Section 1983. While Carre seems to suggest that the private parties may have conspired with state actors – and that they thus may be

held liable under Section 1983, she has not shown a strong likelihood of success on any claim of conspiracy between the private actors and the state actor Defendants.

Third, Carre brings claims against Defendants that are not subject to suit under Section 1983, including the Huntington Woods Public Safety Department. *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (holding that under Michigan law, a police department is "subsumed within [the township] as a municipal entity to be sued under [Section] 1983, and thus the [p]olice [d]epartment was improperly included as a separate defendant in" the action); *Laise v. City of Utica*, 970 F.Supp. 605, 608 (E.D. Mich. 1997) (city police department is "not a legal entity against whom a suit can be directed").

The issues identified by the Court above (and in previous orders) are just some of the problems with Carre's claims. Several of the Defendants have filed motions to dismiss that raise additional serious questions concerning the viability of Carre's claims. For instance, the claims raised by Carre may be barred by the *Rooker-Feldman* doctrine if and to the extent that Carre is seeking review of the judgment of the Oakland County Probate Court. *See VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397 (6th Cir. 2020); *RLR Investments, LLC v. City of Pigeon Forge, Tennessee*, 4 F.4th 380, 387–88 (6th Cir. 2021). Likewise, at least one of the Defendants, the Oakland County Probate Court, may enjoy sovereign immunity from at least some portions of Carre's claims. *See Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 762 (6th Cir. 2010).

Under these circumstances, where there is meaningful doubt both about the Court's jurisdiction and the viability of Carre's claims, Carre has failed to show a strong likelihood of success on the merits.

### b

Carre has also failed to show that she would suffer irreparable injury absent an order directing the management of Charlene's care and assets. Indeed, since the requested relief is aimed at protecting Charlene, there is a real question as to whether Carre, herself, would suffer *any* injury if the Court declined to enter a restraining order directing the management of Charlene's care and assets.

### c

Third, issuance of an order directing the management of Charlene's care and assets could cause substantial harm to others, potentially including Charlene. The relief Carre seeks – freezing her mother's assets, prohibiting expenditures, and enjoining facility transfers (*see* Mot., ECF No. 2, PageID.93; Am. Mot., ECF No. 11, PageID.471-472.) – could impede the ability of her mother's caregivers to properly care for her. While Carre insists that those caregivers are neglecting her mother, that contention seems hard to square with the ruling of the Oakland County Probate Court. At a minimum, Carre has not shown that the issuance of her requested restraining order would not harm third parties.

**d**

Finally, Carre has not shown that the public interest would be served by entry of an order directing the management of Charlene's care and assets.

**e**

For all of these reasons, Carre's motions for a temporary restraining order directing the management of Charlene's care and assets (ECF Nos. 2, 11) are **DENIED**.

**2**

The Court now turns to Carre's motion for an order prohibiting Colette from contacting Carre and Charlene and removing Colette's decision-making authority over Charlene. (*See* Mot., ECF No. 17.)  As the Court previously indicated (*see* Order, ECF No. 18), the Court is not persuaded that Collette has made any death threats against Carre.  Accordingly, there is no basis for the relief Carre seeks.  The motion directed at Colette is therefore **DENIED**.

**3**

Finally, the Court addresses Carre's motion for entry of an order "directing the immediate preservation of all audio/video recordings, transcripts, and digital evidence from the Oakland County Probate Court proceedings held on May 16, 2025, at 1:30 PM and May 23, 2025, at 10:00 AM." (Mot., ECF No. 10, PageID.456.)  Carre cites a concern that the Zoom video recordings of those proceedings "auto-delete" within 30 to 90 days. (*Id.*, PageID.457.)  But Carre cites no authority for the proposition that a federal court can direct a state court regarding the state court's keeping of records or

preservation of evidence, and/or that a federal court may issue a litigation hold against a state court. And it is doubtful that this Court may do so. Generally, "federal courts have no authority to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties." *Haggard v. State of Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970); *Morris v. Tennessee*, No. 06-2007, 2006 WL 1579575, at *2 (W.D. Tenn. May 31, 2006). Moreover, Carre has not persuaded the Court that any critical evidence held by the Oakland County Probate Court will be deleted absent her requested order.

Accordingly, Carre's motion for an order directing the Oakland County Probate Court to preserve evidence is **DENIED**.

## IV

Carre has also filed a "Motion for Entry of Relief on Unopposed Pending Motions Pursuant to Court's Service Order." (Mot., ECF No. 44.) In that motion, Carre says that the Court should grant the temporary restraining orders she seeks because the Defendants have not responded to those motions. (*See id.*) While there are not currently oppositions on file, the Defendants have vigorously contested the nature of Carre's claims in their motions to dismiss. Moreover, before the Court grants the extraordinary remedy of a temporary restraining order, the Court has the independent obligation to determine whether there is a sufficient basis for the relief sought. *See Doe v. Lee*, No. 21-cv-02156, 2023 WL 8199636, at *2 (W.D. Tenn. Nov. 1, 2023) ("Even an unopposed request [for a preliminary injunction] must be examined because 'a

9

preliminary injunction is an extraordinary remedy never awarded as of right.'" (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008))). The Court concludes that there is not. For these reasons, Carre's motion is **DENIED**.

## V

For all of the reasons explained above, Carre's motions for temporary restraining order (*see* ECF Nos. 2, 11, 17), Carre's motion for preservation of evidence and issuance of litigation hold (*see* ECF No. 10), and Carre's motion for entry of relief on unopposed motions (*see* ECF No. 44) are **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: August 4, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 4, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126