UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN R. CARRE,

      Plaintiff,

                                      Case No. 25-cv-11628

v.                                      Hon. Matthew F. Leitman

COLETTE NUTTON, *et al.*,

      Defendants.

_____/

## ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION (ECF No. 141), (2) TERMINATING OBJECTIONS TO MAGISTRATE JUDGE'S NON-DISPOSITIVE ORDERS (ECF No. 142) AS MOOT, (3) ADOPTING RECOMMENDED DISPOSITION OF REPORT AND RECOMMENDATION (ECF No. 111), (4) GRANTING DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 73, 76, 78, 79, 80, 81, 82, 88), AND (5) DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS

This action arises out of a bitter dispute between two sisters, Susan Carre ("Carre") and Collette Nutton ("Collette"), over the control of their aging mother's medical care, personal care, and assets. Intra-family disputes like this one are ordinarily (if not exclusively) heard and determined in state courts. And that is exactly where this litigation began. Carre instituted not one, but two proceedings in the Oakland County Probate Court. In the first, she sought to be appointed as guardian for her mother Charlene Nutton ("Charlene"); in the second, she sought to be named Charlene's conservator. The Probate Court ruled against her and in favor

of Collette in both proceedings. Carre has appealed some of the Probate Court's adverse rulings to the Michigan Court of Appeals; her appeal remains pending.

Carre is not satisfied with the state-court legal proceedings. She believes that the rulings against her resulted not from the weakness of her legal positions, but, instead, from a vast conspiracy between the Probate Court, a high-ranking municipal police officer, a municipal clerk, several private attorneys, the senior residence where her mother lives (and its executive director), twenty John Does, and Collette. Carre has now turned to this Court to right the alleged wrongs that she has experienced in state court. She first tried to "remove" the state proceedings to this Court so that this Court would have direct control over them. (*See* Notice of Removal, ECF No. 1.) When she learned that she could not remove those proceedings because, among other things, she was the petitioner (not the defendant or respondent) in them, she re-packaged the contentions in her Notice of Removal into her Complaint here.

In this action, Carre alleges that the above-mentioned conspirators joined together to violate her constitutional rights in connection with her efforts to assert control over her mother's affairs. She says that they infringed her right to substantive due process, to equal protection of the laws, and to protection from discrimination under the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act. She also says that they violated state law. (*See* Sec. Am. Compl., ECF No. 71.)

Now before the Court are motions to dismiss filed by all of the Defendants. (*See* Mots., ECF Nos. 73, 76, 78, 79, 80, 81, 82, 88.)  On December 15, 2025, the assigned Magistrate Judge issued a report and recommendation in which she recommended that the Court (1) grant Defendants' motions, (2) dismiss all of Carre's federal claims, and (3) decline supplemental jurisdiction over Carre's state-law claims (the "R&R"). (*See* R&R, ECF No. 111.)  On February 5, 2026, Carre filed objections to the R&R. (*See* Objs., ECF No. 141.[1])  For the reasons explained below, the Court **OVERRULES** the objections, **ADOPTS** the recommended disposition of the R&R, and **GRANTS** Defendants' motions to dismiss.  Finally, the Court **TERMINATES AS MOOT** Carre's objections to other, non-dispositive orders issued by the Magistrate Judge. (*See* Objs., ECF Nos. 142.)

The result reached here by the Court returns Carre's dispute with Collette concerning their mother to the state courts – where it has belonged from the very beginning.

---

[1] Carre initially filed objections to the R&R on January 20, 2026. (*See* ECF No. 126.) She later filed what she called "corrected" objections on February 5, 2026. (*See* ECF No. 141.)  The two sets of objections appear identical, but to the extent that they are different, the Court considers the "corrected" objections filed on February 5, 2026, to be the operative objections to the R&R.

3

**I**

**A**

The Court begins with a brief review of the alleged facts and procedural history of this case.  In brief, Carre, who is proceeding *pro se*, says that she and her sister Colette sharply disagree about the care that should be provided to Charlene (who appears to be suffering from dementia) and about how Charlene's assets should be used.  Their disagreement first ended up before the Probate Court in two separate actions.  In those cases, Carre filed petitions seeking a temporary guardianship and conservatorship over Charlene. (*See* Oakland Cnty. Materials, ECF No. 1, PageID.7-86.)  She lost.  The Probate Court appointed a different person – Defendant Khari Hatchett – as guardian *ad litem* for Charlene, and it later denied Carre's petitions. (*See* 3/12/2025 Order Appointing Guardian *Ad Litem*, ECF No. 21, PageID.561; 5/27/2025 Order Dismissing Case, ECF No. 21, PageID.579.)  On January 26, 2026, Carre filed an appeal in the Michigan Court of Appeals seeking review of at least some of the Probate Court's rulings. *See Carre v. Nutton*, Mich. Ct. Appeals Case No. 379174.  That appeal remains pending with the Michigan Court of Appeals. *See* https://www.courts.michigan.gov/c/courts/coa/case/379174.

After losing in the Probate Court, Carre turned her state-court family law litigation into this federal case.  She first attempted to "remove" the state-court proceedings to this Court. (*See* Notice of Removal, ECF No. 1.)  The Court explained

4

to Carre that it appeared her removal was improper because (1) Carre was the petitioner in the underlying state-court proceedings and the federal removal statute does not allow for the removal of proceedings by state-court plaintiffs/petitioners, and (2) the state-court actions were closed, and only a pending action can be removed to federal court. (*See* Order, ECF No. 5.)  Carre then repackaged the claims in her Notice of Removal into a Complaint and began pursuing an original action in this Court. (*See* Am. Compl.[2], ECF No. 7. *See also* Sec. Am. Compl., ECF No. 71.)  In her Second Amended Complaint (which is the current operative pleading here), Carre complains about far more than just Colette's allegedly poor choices with respect to Charlene's care and finances.  Carre claims that her efforts to secure the proper care for Charlene have been stymied by the concerted unlawful action of all of the Defendants.  She brings claims against:

- Collette;

- Carole Sendek and Howard Collens, private attorneys who represented Collette and/or Charlene;

- Hatchett, the guardian *ad litem* appointed by the Probate Court;

- The Probate Court;

---

[2] Although docket entry number 7 is labeled an Amended Complaint, it is the first Complaint that Carre filed here.

- William Cudney, the Deputy Director of Public Safety for the City of Huntington Woods;

- Heidi Brown-Brackholtz, the City Clerk and Freedom of Information Act Coordinator for Huntington Woods;

- Storypoint Birmingham, the senior-living facility where Charlene lives ("Storypoint");

- Haylee Hutchinson, Storypoint's Executive Director; and

- John Does 1-20.[3]

Carre's Second Amended Complaint raises more than seven claims against the Defendants. Those claims are:

(1) "Procedural Due Process Violations (42 U.S.C. § 1983)" brought against the Probate Court, Collette, Collens, Sendek, and Hatchett (Count I);

(2) "Substantive Due Process and Family Association Rights Violations (42 U.S.C. § 1983)" brought against all Defendants (Count II);

(3) "Equal Protection Violations (42 U.S.C. § 1983")" brought against all Defendants (Count III);

---

[3] Carre lists the John Does as Defendants in the case caption of her Second Amended Complaint, but she does not identify them in the section of her pleading in which she describes the Defendants. (*See* Sec. Am. Compl., ECF No. 71, PageID.1102-1103, naming Defendants).

(4) "Conspiracy Against Rights (42 U.S.C. § 1985)" brought against all Defendants (Count IV);

(5) "Americans with Disabilities Act and Section 504 Violations" brought against the Probate Court, Huntington Woods,[4] and Brown-Brackholtz (Count V);

(6) "Systematic Document Fraud (Fraud Upon the Court)" brought against Collete, Collens, Sendek, Hatchett, and the Probate Court (Count VI); and

(7) "State Law Claims (Supplemental Jurisdiction)" brought against all Defendants (Count VII).[5]

**B**

Defendants have each filed motions to dismiss Carre's claims. (*See* Mots., ECF Nos. 73, 76, 78, 79, 90, 81, 82, 88.) The motions were referred to the assigned Magistrate Judge, and on December 25, 2025, the Magistrate Judge issued the R&R. (*See* R&R, ECF No. 111.) The Magistrate Judge recommended that the Court grant the motions, dismiss Carre's federal claims, and decline to exercise subject-matter jurisdiction over Carre's state-law claims. (*See id.*)

---

[4] While Carre names "Huntington Woods" as a Defendant in Count V, it appears that she is referring to Defendant Cudney, the Huntington Woods Deputy Director of Public Safety.

[5] In this Count, Carre appears to bring several distinct state-law claims including claims for the intentional infliction of emotional distress, fraud, and conspiracy.

The Magistrate Judge began with the claims against Hatchett, the guardian *ad litem* appointed by the Probate Court.  (*See id.*, PageID.111, PageID.2006-2007.) The Magistrate Judge concluded that because "[t]he alleged conduct by Hatchett all occurred during performance of her duties in the[ probate] proceedings," Hatchett was entitled to the "protect[ion of] absolute, quasi-judicial immunity" from Carre's claims. (*Id.*)

The Magistrate Judge next turned to the Section 1983 and 1985 claims against the Probate Court. (*See id.*, PageID.2007-2008.)  She held that those claims failed because (1) the claims were "barred by Eleventh Amendment immunity" and (2) the Probate Court was "not a 'person' capable of being sued under § 1983." (*Id.*)

Next, the Magistrate Judge addressed Carre's Sections 1983 claims against Collette, private attorneys Sendek and Collens, and Storypoint and Storypoint's executive director Hutchinson. (*See id.*, PageID.2008-2011.)  She found that those claims "fail[ed] to state any § 1983 claim against [those Defendants] because they are private parties and not 'state actors' as required by § 1983." (*Id.*, PageID.2008.)

The Magistrate Judge then turned to the Section 1983 claims against Cudney (Huntington Woods' Deputy Director of Public Safety) and Brown-Brackholtz (Huntington Woods' City Clerk and Freedom of Information Act Coordinator). (*See id.*, PageID.2011-2014.)  The Magistrate Judge recommended dismissing both of those claims on the basis of qualified immunity. (*See id.*)

The Magistrate Judge next recommended that the Court dismiss Carre's Section 1985 claim brought against all of the Defendants. (*See id.*, PageID.2015-2016.)  She concluded that (1) Hatchett and the Probate Court were immune from that claim and (2) Carre had failed to state a plausible conspiracy claim with respect to the rest of the Defendants. (*See id.*)

Finally, the Magistrate Judge addressed Carre's ADA and Rehabilitation Act claims against the Probate Court and Brown-Brackholtz. (*See id.*, PageID.2016-2017.)  She concluded that Carre had failed to state plausible claims against either of those Defendants. (*See id.*)

The Magistrate Judge did not reach any of Carre's state-law claims.  Instead, she recommended that the Court "decline to extend supplemental jurisdiction over [those] state-law claims and dismiss them without prejudice." (*Id.*, PageID.2018.)

Carre filed her operative objections to the R&R on February 5, 2026. (*See* Objs., ECF No. 141.)  The Court will discuss Carre's specific objections in much further detail below.

## II

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004).

The Court has no duty to conduct an independent review of the portions of the R&R to which a party does not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### III

### A

Before the Court turns to Carre's enumerated objections, it pauses to address the "preliminary statement" that precedes those objections. (*See* Objs., ECF No. 141, PageID.2669-2673.)  In that "preliminary statement," Carre says that the R&R is tainted by a "fundamental error" – namely that it "credit[s] the validity of state processes that [Carre] alleges were corrupted through fraud" and does not "draw[] inferences in Carre's favor." (*Id.*)  The Court disagrees.  The Court has carefully reviewed the R&R, and it concludes that the Magistrate Judge described and applied the correct legal standards when reviewing Carre's Second Amended Complaint and Defendants' motions to dismiss that pleading.  The Magistrate Judge did not make the "fundamental error" described by Carre.

In the "preliminary statement" (and again in the conclusion), Carre also identifies several "critical" "developments" that have occurred since the filing of her Second Amended Complaint that she says "prove[] the conspiracy" she alleges is "active, retaliatory, and designed to defeat this Court's jurisdiction." (*Id.*, PageID.2669-2670. *See also id.*, PageID.2685-2686.)  The Court declines to consider these claims of alleged recent misconduct because they are not properly

before the Court.  The only relevant allegations here are those included in Carre's Second Amended Complaint because that is the operative pleading that Defendants attacked in the motions to dismiss and that the Magistrate Judge considered when ruling on those motions.  The claimed new developments are simply not part of this action at this time.  Thus, the Court will "only consider[] claims set forth in the [Second Amended Complaint] and will not consider any subsequent allegations not included in th[at] complaint." *Jebril v. Webber*, No. 08-10151, 2009 WL 2447551, at *1 (E.D. Mich. Aug. 7, 2009) (declining to consider allegations not included in plaintiff's operative complaint).

While the Court will not formally consider any of the claimed new developments in its analysis of Carre's objections below, the Court has reviewed Carre's new allegations and concludes that they would not change the result here. Carre's new accusations largely echo the allegations that she made in her Second Amended Complaint, and for the reasons explained in the R&R and below, those allegations are insufficient to state viable claims against the Defendants.  Carre's new assertions of fraud and conspiracy are not plausible and do not save any of her claims from dismissal.

The remainder of Carre's "preliminary statement" merely summarizes the arguments she makes in her specific objections.  The Court turns to those enumerated objections below.

**B**

In her first objection, Carre complains about the "background" section of the R&R. (*See* Objs., ECF No. 141, PageID.2673-2674.)  Carre says that the R&R "omit[ted] key" allegations of fraud and conspiracy when describing the factual background of this action and that it did not "draw[] inferences in Plaintiff's favor." (*Id.*, PageID.2674.)  The Court disagrees.  The Magistrate Judge was not required to list in the R&R every allegation of fraud/conspiracy that Carre included in her Second Amended Complaint.  Instead, the Magistrate Judge was required to account for those allegations (and for the inferences that could reasonably be drawn from them) in her analysis.  And she did just that.  Carre has not persuaded the Court that the Magistrate Judge "ignore[d] the much broader conspiracy" alleged in the Second Amended Complaint. (*Id.*)  This objection is therefore **OVERRULED**.

**C**

Carre next objects to the recommended dismissal of her claims against Defendant Hatchett, the guardian *ad litem* appointed by the Probate Court. (*See id.*, PageID.2674-2676.)  As noted above, the Magistrate Judge concluded that Carre's claims against Hatchett were barred by "absolute, quasi-judicial immunity" because (1) "'[g]uardians *ad litem* are entitled to such immunity when they act within the scope of their roles' in judicial proceedings" and (2) "[t]he alleged conduct by Hatchett all occurred during the performance of her duties in [the state-court probate]

12

proceedings." (R&R, ECF No. 111, PageID.2006-2007 (quoting *Arson v. Keller*, 784 F. App'x 900, 908 (6th Cir. 2019).)   None of Carre's objections to that recommendation have merit.

Carre first argues that "[t]he R&R granted absolute immunity to [] Hatchett without addressing *Tower v. Glover*, 467 U.S. 914 (1984)." (Objs., ECF No. 141, PageID.2674.)  Carre says that *Tower* stands for the proposition that "public officials forfeit immunity for intentional fraud or conspiracy," and she says that "Hatchett conspired in fraud" and that that fraud "forfeit[ed Hatchett's] immunity under *Tower*." (*Id.*, PageID.2674-2675.)  Carre's reliance on *Tower* is misplaced.

*Tower* addressed a narrow and specific question not presented in this case: whether public defenders enjoy immunity from claims under Section 1983 alleging that they conspired with state officials to violate a criminal defendant's constitutional rights. *See Tower*, 467 U.S. at 916.  To answer that question, the Supreme Court carefully analyzed the history of immunity doctrines as applied to lawyers who played roles analogous to that of a public defender. *See id.* at 920-922. Based on that historical record, the Supreme Court concluded that public defenders are not entitled to immunity from Section 1983 conspiracy claims. *See id.* at 922-923. Carre has not cited any case in which any court has suggested that the holding in *Tower* has any relevance to a claim against a guardian *ad litem* under Section

13

1983, like Carre's claim against Hatchett here.[6]  For these reasons, Carre is not entitled to relief based upon her objection that the Magistrate Judge failed to address *Tower* when analyzing the claim against Hatchett.

Second, Carre argues that the R&R wrongly "extended immunity [to Hatchett] without determining if Hatchett's actions were within her legitimate [guardian *ad litem*] role." (Objs., ECF No. 141, PageID.2675.)  The Court again disagrees.  As noted above, the Magistrate Judge specifically found that "[t]he alleged conduct by Hatchett all occurred during the performance of her duties," and the Magistrate Judge cited to specific pages of the Second Amended Complaint that supported that conclusion. (*See* R&R, ECF No. 111, PageID.2007, citing Sec. Am. Compl., ECF No. 71, PageID. 1102, 1115-1116.)  Thus, contrary to Carre's objection, the Magistrate Judge did determine whether Hatchett's actions fell within her role as guardian *ad litem*.

Third, Carre says that the Magistrate Judge failed to recognize that Hatchett lost any immunity she may have otherwise enjoyed when Hatchett participated in

---

[6] In her objections, Carre argues that "*Tower* applies to [guardians *ad litem*] as quasi-judicial actors." (Objs., ECF No. 141, PageID.2675.)  In support of that argument, she cites the United States Supreme Court's decision in *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985).  But like *Tower*, *Cleavinger* did not involve guardians *ad litem*.  Instead, that case involved members of a federal prison's Institution Discipline Committee.  Carre has made no effort to show how Hatchett, as a court-appointed guardian *ad litem*, has a role that is at all analogous to the parties in *Cleavinger*.

14

the alleged conspiracy.  However, Carre has not plausibly alleged that Hatchett engaged in a conspiracy to violate her (Carre's) constitutional rights.  And even if she had done so, Hatchett would still be entitled to immunity.  That is because the quasi-judicial immunity enjoyed by a guardian *ad litem* applies even where the guardian is alleged to have participated in a conspiracy. *See Arson*, 784 F.App'x at 908 (holding that guardian *ad litem* was entitled to absolute quasi-judicial immunity even where plaintiff alleged the guardian participated in a conspiracy); *Jacob v. Ronayne*, No. 20-13370, 2022 WL 90852, at * 5-6 (E.D. Mich. Jan. 7, 2022) (granting motion to dismiss filed by lawyer-guardian *ad litem* and explaining that "even if [the guardian] were a state actor or sufficient conspiracy allegations had been pled, [the guardian would still be] entitled to [quasi-judicial] immunity for the duties she performed in [] her role as [lawyer-guardian *ad litem*]"); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) ("Judicial immunity attaches even if the act was done in furtherance of a conspiracy").

Carre counters that the Supreme Court's decision in *Dennis v. Sparks*, 449 U.S. 24 (1980), stands for the proposition that a defendant who would otherwise be entitled to immunity may not assert an immunity defense where the defendant is alleged to have participated in a conspiracy to violate the plaintiff's constitutional rights.  In Carre's words, "[u]nder *Dennis v. Sparks* …, immunity does not shield conspirators." (Objs., ECF No. 141, PageID.2676.)  But *Dennis* does not support

15

that proposition.   In *Dennis,* the Supreme Court held that private parties who conspired with a judge could be treated as state actors and could be sued under Section 1983.  However, the judge-defendant in Dennis *did* enjoy absolute immunity even though he was alleged to have participated in the conspiracy. *See Dennis*, 449 U.S. at 27-28.  *Dennis* thus provides an example of conspiracy allegations being *insufficient* to overcome an immunity defense. It does not support Carre's contention that Hatchett's immunity defense fails because Hatchett is alleged to have participated in a conspiracy.

Fourth, Carre argues that "the R&R dismissed [the claims against] Hatchett[] without accepting [the Second Amended Complaint's] allegations as true." (Objs., ECF No. 141, PageID.2676.)  But as explained above, the Magistrate Judge applied the proper legal standards to her review of Carre's Second Amended Complaint and Hatchett's motion to dismiss.

Finally, Carre says that "the [Second Amended Complaint's] forensic evidence of systemic fraud … precludes dismissal without discovery." (*Id.*)  But Carre has not identified the particular discovery she claims she needs, nor has she shown how that discovery would either overcome Carre's absolute immunity or render plausible her claims against Hatchett.

16

For all of these reasons, Carre's objections to the Magistrate Judge's recommendation that the Court dismiss her claims against Hatchett are **OVERRULED**.

**D**

Next, Carre objects that the Magistrate Judge wrongly recommended dismissal of her Section 1983 claims against Defendants Collette (her sister), Sendek and Collens (private attorneys who represented Collette and/or Charlene), Storypoint (the senior living facility where Charlene lives), and Hutchinson (Storypoint's executive director) "without applying the *Dennis v. Sparks* conspiracy framework." (Objs., ECF No. 141, PageID.2677-2680.)   According to Carre, the "*Dennis* framework" is the "controlling test" for her Section 1983 claims.   And she says that under *Dennis*, where "private persons [are] 'jointly engaged with state officials in the challenged action, [they] are acting 'under color of law.'" (*Id.,* PageID.2677, quoting *Dennis*, 449 U.S. at 27-28.)   Carre insists that she satisfied *Dennis* because she sufficiently alleged that the private parties listed immediately above conspired with state actors, and she says that the Magistrate Judge erred in finding to the contrary.   The Court disagrees.

*Dennis* does not help Carre here because Carre has not plausibly alleged that Collete, Sendek, Collens, Storypoint, and/or Hutchinson "jointly engaged" with any state officials to violate Carre's rights.   Indeed, as the Magistrate properly found, the

17

Second Amended Complaint "alleges no facts to show a close nexus between the state and the challenged actions of a private litigant (Collete) or the attorneys who represented her (Collens and Sendek)." (R&R, ECF No. 111, PageID.2010-2011.) Likewise, the Second Amended Complaint contains no viable allegations that Storypoint and Hutchinson acted jointly with the state to deprive Carre of her constitutional rights. For example, Carre says that "Storypoint/Hutchinson invoked state authority via fraud," and in support of that statement she cites paragraphs 33, 34, and 67 of her Second Amended Complaint. (*See* Objs., ECF No. 141, PageID.2680.) But those paragraphs do not mention Storypoint or Hutchinson; they relate to the actions of other Defendants and parties. Simply put, Carre's allegations of joint action are vague and conclusory, at best, and cannot support a finding that Collete, Sendek, Collens, Storypoint, and/or Hutchinson acted under the color of law under *Dennis*. Carre's third objection is therefore **OVERRULED**.[7]

---

[7] In Carre's third objection, she also objects to the dismissal of the Section 1983 claims brought against Collete, Sendek, Collens, Storypoint, and Hutchinson on the basis that the Magistrate Judge wrongly applied the Sixth Circuit's decision in *Warman v. Mount St. Joseph Univ.*, 144 F.4th 880 (6th Cir. 2024). (*See* Objs., ECF No. 141, PageID.2680.) The Magistrate Judge cited *Warman* for the proposition that "[t]he burden is on the plaintiff to show that a private actor['s actions]" are fairly attributable to the state. (R&R, ECF No. 111, PageID.2009 (citing *Warman*).) Carre's two-sentence *Warman* objection – "Even under *Warman* … defendants meet nexus/entwinement tests via coordination (R&R at 9-10). R&R's conclusion they don't is error." (Objs., ECF No. 141, PageID.2680) – is wholly conclusory and provides no basis to deny Defendants' motions to dismiss. Carre does not explain how Defendants "meet [the] nexus/entwinement tests" for determining if a private party engaged in action that could be attributed to the state, nor does she explain how

18

**E**

Carre next objects to the Magistrate Judge's determination that Defendants Cudney (Huntington Woods' Deputy Director of Public Safety) and Brown-Brackholtz (Huntington Woods' City Clerk and Freedom of Information Act Coordinator) are entitled to qualified immunity. (*See* Objs., ECF No. 141, PageID.2681.) Carre asserts that before deciding the qualified immunity question, the Magistrate Judge first needed to address whether Cudney and Brown-Brackholtz had "forfeit[ed]" their immunity under the Supreme Court's decision in *Tower* due to their alleged "fraud". (Objs., ECF No. 141, PageID.2681.) And Carre insists that had the Magistrate Judge performed such an analysis under *Tower*, she would have found that Cudney and Brown-Brackholtz could not invoke qualified immunity.

Carre's reliance on *Tower* is misplaced for several reasons. First, Carre did not timely raise her argument under *Tower*. Cudney and Brown-Brackholtz raised their qualified immunity defense in their motion to dismiss (*see* Mot., ECF No. 88, PageID.1675-1678), but in her response to that motion, Carre never invoked *Tower* or argued that the Court needed to perform an analysis under *Tower* in connection with its review of Cudney's and Brown-Brackholtz's qualified immunity argument. (*See generally* Resp., ECF No. 93.) It is well established that "while the Magistrate

---

the Magistrate Judge's legal analysis on that point was wrong. Carre's conclusory objection that the Magistrate Judge erred in applying *Warman* is overruled.

19

Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). And Carre has not identified any "compelling reasons" that would justify departing from that general rule here. Thus, Carre's objection is overruled on that basis alone.

Second, and in any event, *Tower* does not entitle Carre to relief. As explained above, *Tower* is not a case about the forfeiture of immunity by public officials *writ large*. It is a case about whether *public defenders* are entitled to immunity based on the history of immunity with respect to that particular role in the legal system. *See Tower*, 467 U.S. at 923. Thus, *Tower* says nothing about whether a Deputy Director of Public Safety like Cudney or a City Clerk like Brown-Brackholtz should be barred from invoking qualified immunity. Nor has Carre shown that a court must perform an analysis under *Tower* before it addresses the question of qualified immunity. Indeed, she has not cited any case in which any court has held that an analysis under *Tower* must precede a qualified immunity analysis.

Finally, Carre has not plausibly alleged that Cudney or Brown-Brackholtz conspired with anyone to violate her constitutional rights, and thus they would not forfeit their qualified immunity even if such immunity could be forfeited though allegations of conspiracy.

20

For all of these reasons, Carre's fourth objection is **OVERRULED**.

**F**

Next, Carre raises additional objections to the recommended dismissal of her due process and equal protection claims against Cudney and Brown-Brackholtz. (*See* Objs., ECF No. 141, PageID.2681-2683.)  Carre argues (1) that Cudney's actions "shock[ the] consci[ence]" and (2) the "R&R dismissed [Carre's] equal protection [claim against Brown-Brackholtz] without addressing [a] class-of-one claim." (*Id.*, PageID.2681-2682.)  Neither argument entitles Carre to relief.

The Court begins with the claims against Cudney.  The Magistrate Judge concluded that Cudney was entitled to qualified immunity based on, among other things, Carre's failure to plausibly allege that Cudney had violated Carre's constitutional rights. (*See* R&R, ECF No. 111, PageID.2011-2014.)  Carre now says that that conclusion was in error because the Cudney's alleged actions "shock[ed] the consci[ence]." (Objs., ECF No. 141, PageID.2681-2682.)  But that argument is conclusory.  Carre has not explained how Cudney's actions shocked the conscience to such a degree that it would rise to the level of a constitutional violation, nor has she explained how, even if Cudney's actions did shock the conscience, it was clearly established that Cudney's actions were unconstitutional.  And Carre has not cited any case in which any court has held that conduct like that in which Cudney allegedly engaged so shocked the conscience that it rose to the level of a substantive due

21

process violation.  The conclusory facts alleged here simply cannot overcome Cudney's invocation of qualified immunity.

Carre's claims against Brown-Brackholtz fare no better.  In her objections, Carre claims that the R&R failed to "address[ her] class-of-one" claim against Brown-Brackholtz. (Objs., ECF No. 141, PageID.2682.)  But the first time that Carre raised the possibility that she was lodging a "class-of-one" claim against Brown-Brackholtz was in her objections to the R&R, and as explained above, a party may not raise new arguments for the first time in those objections. *See Murr*, 200 F.3d at 902 n.1.  Moreover, and in any event, Carre has failed to persuade the Court that she has plausibly alleged a "class of one" theory here.

For all of these reasons, Carre's fifth objection is **OVERRULED**.

**G**

In Carre's sixth and final objection, she objects on several grounds to the recommended dismissal of her claims against the Probate Court. (*See* Objs., ECF No. 141, PageID.2683.)  In the R&R, the Magistrate Judge concluded that the Probate Court was entitled to sovereign immunity with respect to Carre's constitutional claims and that Carre's other federal claims against the Probate Court were not plausible. (*See* R&R, ECF No. 111, PageID.2007-2008, 2016-2017.)  None of Carre's objections entitle her to relief from that recommendation.

22

Carre first argues that she is seeking "prospective injunctive relief" against the Probate Court, and she says that "suits against state entities for prospective relief are not barred" by sovereign immunity. (Objs., ECF No. 141, PageID.2683.)  But Carre has not identified any such particular prospective relief that she seeks against the Probate Court.  And much more importantly, Carre has not persuaded the Court that prospective injunctive relief against the state court, itself – which would likely "involve unduly intrusive interference with, and monitoring of, the day-to-day conduct of state hearings and trials" *Belill v. Hummel*, 835 F.2d 877, at *4 (TABLE) (6th Cir. 1987) (holding that "the fundamental precepts of federalism compel us to uphold the district court's refusal to grant plaintiff's request for equitable relief") – would be appropriate here.

Carre next objects to the recommended dismissal of her statutory claims against the Probate Court brought under the ADA and the Rehabilitation Act.  She says that dismissal of those claims is inappropriate because "Congress abrogated" immunity for those claims. (Objs., ECF No. 141, PageID.2684.)  But the Magistrate Judge did not recommend that the Court dismiss those claims on the basis of sovereign immunity.  Instead, the Magistrate Judge concluded that those claims failed because Carre had "cited no factual allegations about how or when the [P]robate [C]ourt failed to provide her reasonable accommodations for her disability." (R&R, ECF No. 111, PageID.2017.)  Because this objection does not

23

attack the basis for the Magistrate Judge's recommendation, it provides no basis to provide her relief.

Finally, Carre says that "[u]nder *Dennis v. Sparks* and *Tower v. Glover*, the [Probate Court's] joint action with private actors … forfeits immunity." (Objs., ECF No. 141, PageID.2684.)  But for all of the reasons explained above, neither *Dennis* nor *Tower* persuade the Court that Carre has stated viable claims here – especially in light of the fact that Carre has not plausibly alleged that the Probate Court conspired with anyone to violate her constitutional rights.

For all of these reasons, Carre's sixth objection is **OVERRULED**.[8]

**H**

As none of Carre's objections persuade the Court that the Magistrate Judge erred in the R&R, the Court will **ADOPT** the recommended disposition of the R&R, **GRANT** Defendants' motions to dismiss, **DISMISS** Carre's federal claims, and **DECLINE** to exercise supplemental jurisdiction over Carre's state-law claims.

---

[8] Carre also argues that "Oakland County's local control" over the Probate Court "may render it a 'county' entity liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)," therefore defeating sovereign immunity. (Objs, ECF No. 141, PageID.2684.)  But Carre's argument about the funding of the Probate Court is purely speculative, and she provides no basis for concluding that her claims against the Probate Court are viable under a *Monell* theory.

**IV**

Finally, the Court turns to Carre's objections to certain non-dispositive orders that the Magistrate Judge previously issued, including orders striking Carre's filings (*see* Order, ECF No. 130) and granting Collete's motion to cancel notices of *lis pendens* (*see* Order, ECF No. 132). (*See, e.g.*, Objs., ECF No. 142.)  Given the Court's conclusion that all of Carre's federal claims fail to state viable causes of action against the Defendants, and its decision to decline supplemental jurisdiction over Carre's state-law claims, all of Carre's objections to the Magistrate Judge's non-dispositive orders are now moot.  The Court therefore **TERMINATES** those objections.

**V**

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

- Carre's objections to the R&R (ECF No. 141) are **OVERRULED**;

- The recommended disposition of the R&R (ECF No. 111) is **ADOPTED**;

- Defendants' motions to dismiss (ECF Nos. 73, 76, 78, 79, 80, 81, 82, and 88) are **GRANTED**.  Defendants' federal claims are **DISMISSED** and the Court **DECLINES** to exercise supplemental jurisdiction over Carre's state-law claims; and

- Carre's objections to the Magistrate Judge's non-dispositive orders (ECF No. 142) are **TERMINATED AS MOOT.**

   **IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 9, 2026

   I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 9, 2026, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
